LOTTINGER, Judge.
This is a suit on open account in which the plaintiff seeks to recover the purchase price, $336.00, of certain building material, described as twelve (12) one hundred pound (100) Colorundum Green and ten (10) one gallon Colorundum Glazecoat Green sold to' the defendant. It is admitted that the material was purchased for the price sued for and the sole defense is that the products were unfit for the purpose for which sold.
Colorundum, as described by Mr. Percy, the representative of the plaintiff who> sold the product to. the defendant, is a beautifying, hardening and water-repellent agent used in the finishing of concrete floors, walls, sidewalks, etc. This product was used by the defendant to> finish the concrete floors of certain tourist cabins which he had erected in West Baton Rouge Parish. He now maintains that the material was wholly unsatisfactory in that water seeps through the concrete and remains on the floors after a rain.
The trial court found that Mr. Percy, plaintiff’s representative, had informed the defendant that the compound was water-repellant, .but not water -proof, and that consequently the defendant’s impression that it was water-proof was in no way due to the representations of plaintiff as its agent. Consequently judgment was rendered in favor of plaintiff as prayed for and the case is now on appeal by the defendant.
•The record discloses that Mr. Percy had been employed by defendant as a civil engineer to lay off the location of the tourist court and that while so employed he informed defendant about Colorundum and made the sale. It also1 appears that the matter was pretty thoroughly discussed, both as to the method of laying a concrete floor and the advantages of using Colorun-dum in connection with same. It is clear that defendant had his floors constructed in accordance with Mr. Percy’s instructions, which included using separate layers of gravel, sand and tar paper, and that the Colorundum was applied according to the specifications of the plaintiff company.
There is a great deal of testimony in the record concerning the difference between the terms water -proof and water-repellant or damp-proof (the latter two1 apparently being about the same). According to Mr. Percy, we learn that a water proofing substance is one which will prevent the seepage of. water through a material which is below the water table, such as in the case of a 'basement floor or wall. A water-repellant agent is apparently one which will prevent seepage on a material kept above the water table. Mr. Percy testified very definitely that he explained this difference to the defendant and that at ho time did he represent Colorundum as being waterproof. There was introduced into, evidence a circular or pamphlet describing Colorun-dum, .similar to one which had been handed defendant by Mr. Percy, and therein it is described as being damp-proof.
Our main concern, however, is not the subtle distinctions between the above terms but is rather what was conveyed and understood by the parties to. the sale. In this connection we are greatly impressed with the fact Mr. Percy was no stranger to the defendant’s tourist court project but rather had worked with and advised him on it. Particularly noteworthy, we think, also is the fact that the concrete floors were constructed by defendant in accordance with Mr. Percy’s advice and instructions. It is *115 clear'that defendant did not know then and probably does not know now the technical difference between water-proof and water-repellant. Mr. Percy, however, who- described and explained the attributes of Col-orundum to him, knew exactly the type of terrain upon which the cabins were situated and, the manner in which the concrete floors therein had been constructed. In other words he was perfectly familiar with all the facts and circumstances surrounding the use to which any product he sold would be put and he recommended the use of Colorundum. We do not wish for one moment to imply that Mr. Percy is guilty of intentional misrepresentation; we do-, however, feel that defendant purchased the product from him as a result of his representations with the belief that it would be a satisfactory finish for his floors.
We are also impressed with the fact that the plaintiff’s circular which was handed defendant described Colorundum as “water-repellant” and as an “ideal flooring”. We think that through the representations of Mr. Percy and the pamphlet the defendant was led into believing that the compound would be a satisfactory finish for his floors, which it was not.
The plaintiff does not deny that the floors become damp and that water lies thereon. The main contention is that the product was not represented as being water-proof and that the seepage is caused by the earth fill being level with or higher than the concrete floors of the cabins. The defendant denies that the floors are lower than the outside grade of earth, and we are inclined to believe this to be correct in view of the fact that it is undisputed that the seepage is more or less uniform over the whole floors and not concentrated near the edges. It would seem logical that if the dampness were caused by a difference in level between floor and earth that such dampness would be concentrated on the perimeter and 'not be uniform as appears to be the case. At any rate, plaintiff did not show with any degree of certainty what difference in level,. if any, existed or that this condition existed as to all of the cabins. The defendant did state on the other hand, and it seems to be undisputed,- that water stands on the floors of all of the cabins. This is also brought out by the testimony of defendant’s caretaker. The defendant testified further that the water seeps up through the floor and does not come through the walls.
By way of rebuttal the plaintiff placed a contractor, one Mr. Collins, on the stand, who testified that he used Colorundum successfully several times, but that he only used it as a coloring agent. We do not feel that this testimony is of any value ■ here, however, for the sole question with which we are concerned is the manner in which the product was held out to defendant. . And, as stated above, we think it was represented to him as being a satisfactory and complete finish for the floors, which it definitely was not.
The plaintiff argues in brief that defendant has waived his right to set aside the sale by reason of his failure to make timely objection and cites in support thereof the ruling in the case of Hydrotex Industries v. Cartwright, La.App., 45 So.2d 93. It appears that in the cited case the defendant sought to set aside the sale of a water proofing paint because of its not being satisfactory for the purpose intended. The court held that the defendant, through his silence and failure to object for a period of some eighteen months, had waived his rights and made it impossible for plaintiff to have protected itself on its guarantee.
We do not think the cited case to be applicable here for the reason that due to the nature of the product involved, timely objection would have been of no assistance to plaintiff. In the Hydrotex case, supra, a timely complaint would have enabled plaintiff to furnish more paint or to have another coat applied. Here the Col-orundum was irrevocably committed to the concrete, and there appears to be no more possibility to correct the condition today than there was a year ago.
In the case of Acorn Refining Company v. Ringgold, La.App., 198 So. 394, 395, this court through Judge Dore, stated: “Civil Code, Article 2475, provides that ‘the seller is bound to two principal obligations, that of delivering and that of war *116 ranting the thing which he sélls’. Under Civil Code, Article 2476, ‘the warranty respecting the'seller has two objects; the first is the buyer’s peaceable possession of the thing sold, and the second is the hidden defects of the thing sold or its redhibitory vices’. It is now well established, under these articles, that, in the absence of an express waiver of warranty, the vendor of paint, etc., warrants the thing sold as fit for the purposes intended.”
We find no such waiver of warranty and therefore from the facts and circumstances as found in this record, we are of the opinion that the products sold- to this defendant were unfit or unsuited for the purpose for which sold. ■ -
Therefore, for the above and foregoing reasons, the judgment appealed from is hereby reversed and annulled and judgment is rendered in favor of defendant, Houston Conder and against the plaintiff, A.- C. Horn Company of Texas,- dismissing the demands of plaintiff at plaintiff’s cost. ■
Judgment reversed.