PRICE, Judge.
This is an action in redhibition wherein the plaintiff seeks to set aside the sale of a 1970 Oldsmobile Toronado purchased from the defendant and to obtain a refund of the purchase price and other expenses incurred by the plaintiff as a result of alleged vices and defects. Defendant denied the existence of such vices and defects and filed a third party demand against General Motors Corporation seeking reimbursement under its warranty in the event defendant was cast in judgment. The trial court rendered judgment for defendant on the principal demand and rejected defendant’s third party demand.
Plaintiff appealed. Rountree has answered the appeal and appealed its third party claim to bring General Motors Corporation before this court.
The Segall Company, through its President, Ralph Segall, purchased and took delivery of the car on May 1, 1970, paying the total sum of $5,706. On May 11, after Segal had driven the car 657 miles, the thermostat was replaced by Rountree to correct an overheating problem. Segall continued to use the car without further problems until July 17, 1970, on which date the car was being driven from Dallas to Shreveport and experienced an overheating problem while stopped at a service station in Longview. A station attendant removed the radiator cap, allowing a portion of the radiator coolant to escape. Water was added until the engine was cooled off and Segall left the station. After traveling a few miles the hot light came on again and was followed by the “stop engine” light, forfcing him to pull off the road. By this time the engine had overheated to the ex *631 tent the automobile would not run and it was necessary to have it towed by wrecker to Shreveport.
On examining the vehicle, the service department of Rountree was concerned that some warping of the cylinder heads in the engine may have occurred due to the overheating, and on the authorization of General Motors, a new short block was placed in the engine. After completion of the necessary repairs, Rountree notified Segall, who refused to accept the automobile and instituted this action.
Redhibition is defined by the Civil Code ass “the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.” LSA-C.C. Art. 2520.
The Code further states, “[t]he buyer who institutes the redhibitory action, must prove that the vice existed before the sale was made to him. If the vice has made its appearance within three days immediately following the sale, it is presumed to have existed before the sale.” LSA-C.C. Art. 2530. There is ample authority in our jurisprudence for the application of these articles to the sale of automobiles. Stumpf v. Metairie Motor Sales, Inc., 212 So.2d 705 (La.App., 4th Cir. 1968).
As clearly stated in the latter article and in the jurisprudence, the burden is upon the buyer to prove that the vices and defects, which appeared in this case long after the three days presumptive period had ended, were, in fact, in existence before and at the time of the sale. Plaintiff has failed to sustain this burden.
Plaintiff correctly stated that it is not necessary for the buyer to seek out and prove the particular and underlying cause of the defects in a complicated piece of machinery, yet it is necessary that he prove the defect exists. Stumpf, supra; Glenn v. Caire, 164 So.2d 656 (La.App. 3d Cir. 1964). Plaintiff’s case in chief consisted of the testimony of Segall and his wife depicting the happenings of July 17, when the engine failure occurred due to overheating. Segall readily admitted that the car had been running fine until that date. With the exception of the thermostat being replaced at 657 miles, there had been no history of any trouble with the car whatsoever until this date and the reading on the odometer showed the car had been driven a total of 4,498 miles.
Defendant, on the other hand, presented two expert mechanics who testified that if such a defect were present at the time of the sale which would have caused an overheating problem, it would have manifested itself long before July 17th. They further testified the damage to the engine probably resulted from the actions of the station attendant in removing the radiator cap, allowing a substantial quantity of coolant to escape and then pouring cool water into the radiator of the overheated engine, causing the cylinder head to warp. In addition, these witnesses explained the probability that the complete failure of the engine a short time later was a result of further overheating caused by internal loss of the water placed in the radiator through the warped cylinder heads.
The evidence shows that after plaintiff refused to accept the repaired automobile, the parties entered into an agreement whereby the vehicle was transferred back to Rountree for the sum of $3,800, and, thereafter, the car was resold by Roun-tree to a third party. This purchaser testified he had driven the car approximately 25,000 miles in a six-month period and had experienced no difficulty with the automobile.
Plaintiff suggests the case of Stevens v. Daigle & Hinson Rambler, Inc., 153 So.2d 511 (La.App. 1st Cir. 1963) is analogous to this case and is authority for the rescission of the sale of an automobile where an entire engine is replaced to render it serviceable. We have examined the Stevens case and find the facts of that case somewhat different from this situation in that the buyer in the Stevens case had *632 a continuous problem with the newly purchased vehicle and the court therefore found the evidence to show the defect must have existed at the time of the sale.
It is noteworthy that in both the Stevens and Stumpf cases relied on by plaintiff wherein a rescission of the sale was ordered by the court, it was shown that the buyer had continuous difficulty with the vehicle from the time of sale and repeated attempts to repair had been made by the seller, therefore justifying a conclusion the defects existed at the time of sale.
Although the trial judge did not give written reasons for judgment rejecting plaintiff’s demands, it can be assumed he did not find plaintiff had proven by a preponderance of the evidence that the engine trouble which occurred on July 17th resulted from any defect in the vehicle which existed at the time of sale.
We can find no manifest error in this finding of fact by the trial judge which is supported by the evidence.
The judgment appealed from is therefore affirmed.
Appellant, Segall, is to pay all costs of this appeal.